## BALTIMORE CITY COURT

Filed September 12, 1892.

Art. IV, Sec. 671, Code Pub. Local Laws (Amended 1918 Charter, Sec. 125).

MAYOR & CITY COUNCIL

VS.

WM. T. GRIEVES.

*Wm. S. Bryan, Jr.*, for plaintiff.

*W. Benton Crisp* for defendant.

HARLAN, C. J.—

In 1883 the Mayor and City Council of Baltimore, by ordinance No. 44 of that year, declared all that part of Center Market lying between Lombard and Pratt streets "a wholesale market for country produce brought into the city in wagons and carts."

In 1891, by Ordinance No. 116 of that year, it was enacted "That the annual rental for a stand in the wholesale market for country produce heretofore established within the limits of Center Market by Ordinance 1883, No. 44, shall be for brokers and commission merchants and others who deal in country produce not raised or prepared by themselves the sum of $50; and for persons who sell only country produce raised or prepared by themselves and from wagons or carts owned by them the rental shall be $5—the said rentals to be paid in advance." (Sec. 1) "That any person renting a stand in or the privilege to use said wholesale market, shall procure a certificate of such rental from the clerk of the market, which shall set forth that the party so renting is entitled to a stand in said market and to the privilege of using the same; but the location of carts and wagons, and the particular stands to be occupied by them, shall be from time to time and always subject to the control of the clerk of said market. (Sec. 2.) "That any person selling in or using said market without being entitled to a stand therein shall be liable to a fine of twenty dollars for each and every offence." (Sec. 4.)

The defendant is a broker or commission merchant dealing in country produce not raised or prepared by himself, and having sold produce consigned to him from certain wagons or carts within the limits of the said wholesale market at various times during the three months next prior to the bringing of this suit, without having paid the so-called advance rental of $50, or procured a certificate of rental from the clerk of Center Market, the city has brought this action to recover $50, as upon an implied contract for use and occupation. It is manifest that there can be no recovery upon this theory if the city has transcended its legislative powers in enacting the ordinance fixing the so-called rental. The sole power of the city with reference to markets is given by two sections of Article IV of the Code of Public Local Laws. One of these, section 671, confers authority "to erect and regulate markets," and the other, Section 678, provides that "the Mayor and City Council may lease, sell or dispose of the stalls or stands in any market in any manner, or for any term they may think proper."

Under Section 671 the city can establish markets and make reasonable police regulations for the same, but has no power to raise revenue under the guise of exercising the police power; Vansant vs. Harlem Stage Co., 59 Md. 334; State vs. Rowe, 72 Md. 548. The plaintiff's counsel does not rely upon this section, but insists that the ordinance can be supported under Section 678.

"It is well established law that municipal authorities can exercise no powers that are not in express terms,

or by fair and reasonable intendment conferred upon them. In the case of St. Mary's Industrial School for Boys vs. Brown et al., 45 Md. 332, this Court adopts the language of the Supreme Court of the United States in Minturn vs. Larue, 23 Howard 435, that: Any ambiguity or doubt arising out of the terms used by the legislature must be resolved in favor of the public. It must be by express grant or by fair and reasonable intendment, that a municipal corporation can get authority over the rights and property of the citizens; else, "the trades and business of the people would be at the mercy and be dependent upon the caprice of those who might exercise municipal power, instead of being regulated by the general law of the land. And it is 'the plain duty of the Courts to see that the corporate authorities do not transcend the authority delegated to them.'" So say the Court of Appeals in State vs. Rowe, 72 Md. 599, 550, and bearing these principles in mind, the only question for the Court's consideration seems to me whether the grant of power "to lease the stalls and stands in any market in any manner, and for any term they may think proper," can fairly and reasonably be considered, having regard to the terms employed and resolving any doubt or ambiguity in favor of the public, as conferring upon the Mayor and City Council authority to fix by ordinance an annual charge to be paid in advance by all persons of a certain class who wish to make use of a certain open space, set apart as a "wholesale market," without such persons acquiring any title in or right of possession to any particular stall or stand or location or defined portion of such space. The undisputed proof in this case is that the wholesale market contains no physical structures whatever in the nature of stalls or stands, nor any marks or boundaries by which particular localities are defined as stands. The ordinance itself does not define the portion of space which shall be regarded as "a stand," and to the use of which certificate holders shall be entitled. Whether each such holder, be he producer or broker, shall have the right to occupy sufficient space for one wagon or one hundred is not determined. The clerk of the market has the right to control the location of carts and wagons, but this is necessarily the location they are to occupy *within the space.* He has no power to cause those who have occupied to leave the wholesale market in order to make room for others, nor to exclude any wishing to bring in their carts or wagons from doing so. The number of those entitled to "a stand in, or the privilege of using, the wholesale market," may be increased at any time at the will of the city and the increase may be so great as to diminish largely, or even practically to destroy the value of the right. It is in proof that there are occasions now when the space is so crowded as not to afford room for all who at the time desire to use it.

It seems plain to me that under the power to create tenancies as to particular stalls, stands or localities in the markets the attempt has been to create a general easement or right of use as to this wholesale market, to be enjoyed by all who pay the required annual charge.

The distinction between a tenancy and an easement is so well recognized that I am clearly of opinion that this ordinance cannot be regarded as being within the power given to the Mayor and City Council by the legislature, and must therefore be treated as invalid.

It has been suggested that the defendant, if not liable for use and occupation, is liable as a trespasser upon the city's private property, and that the Court should assess the damages at $50; but, the case having been brought as *in contract,* and announced at the trial, to test the validity of the ordinance, and the Court having determined that question against the City, it does not commend itself to my judgment to allow the cause of action to be amended under these circumstances, so as to hold the defendant liable *in tort.*

The verdict will be for the defendant and the judgment below *affirmed.*